OPINION OF THE COURT
Alexander W. Kramer, J.
The plaintiffs herein are a firm of attorneys at law. The defendant is a practitioner of medicine, specializing in orthopedics.
Plaintiffs represented one Hilda Rivera (hereinafter referred to as Rivera).
Rivera consulted plaintiffs concerning a tort claim. As the result of the ensuing representation, plaintiffs instituted an action in the Supreme Court on behalf of Rivera.
In due course that action wended its way to trial on the *1012 Supreme Court calendar. While, at the time, it was the practice to have split trials (one to determine the issue of liability; the other to fix damages), plaintiffs managed to obtain permission to have both issues decided in one trial because Rivera and her family had become permanent residents of Porto Rico following the inception of the action.
Ira M. Hariton, one of the plaintiffs, made arrangements with defendant’s office to have Rivera examined again by defendant on Monday, June 7, 1976, in anticipation of having defendant testify as an expert on behalf of Rivera — he having treated her ab initio for the injuries complained of. Hariton was told by defendant’s secretary that defendant’s fee for such service (i.e., testifying at the trial) would be $700. On the Monday in question Hariton tendered his firm’s check to defendant for $350; Hariton told the defendant the balance would be paid in court. Defendant demurred: he stated that his fee was. payable in advance and that he would not leave Huntington whereat he maintained his office until he was in receipt of the full $700. Hariton assured defendant that he would be paid the additional $350 in advance as requested. Defendant went on to state that, if the case were settled; and —if he did not have to appear and testify — $350 would then be refunded.
Hariton testified that he then explained to defendant that a jury had been already selected; that he had been instructed to appear in court on Wednesday, June 9, 1976 — at which time the case would be assigned to a Judge and the trial would commence. Hariton further indicated that he told defendant that he would start the trial — probably by having Rivera testify; and that he would then follow her with defendant’s appearance. Hariton was not sure just when that would be.
Defendant claims that he hastened to point out to Hariton that his very busy schedule (a so-called court-ordered examination before trial on one day: a commitment to testify in another case in Nassau County on another) precluded his availability for appearance in the Suffolk County Supreme Court on any day during the week of June 7 other than the Thursday of that week. And further — defendant claims — he told Hariton that if the case were settled, and if his services at the trial were not needed — he would require 24 hours’ notice of cancellation before he would refund the $350 as hereinbefore indicated. The reason for this was so that defendant would be able to reconstruct his routine for Thursday; sched *1013 ule appointments on that day, and thereby make it productive.
What was left unsaid in enunciating this programmed policy (both according to the defendant’s own admission and the testimony of his former secretary, the witness, Ellen Franssen) was the fact that it was the defendant’s practice to take Thursday as a day off!
Hariton went forward on Wednesday, June 9, 1976. The case was assigned to a Trial Judge. Despite the selection of the jury, a prolonged preliminary conference of several hours’ duration ensued. The conference was fruitful. Some time after 2 p.m. a settlement was reached.
Hariton immediately telephoned his office. He instructed his secretary to contact defendant and tell him that he would not be needed the following day. He also instructed his secretary to request the refund of $350.
Several weeks passed. No refund was forthcoming. Hariton phoned defendant and reiterated the request for the $350 refund. Defendant demurred. He contended that, since he had not received 24 hours’ notice, he had not been able to reconstruct his work day on Thursday and, therefore, he could not, and would not comply.
Upon the settlement of the Rivera case, plaintiffs were reimbursed by Rivera for $350 from the proceeds of the settlement. And when the defendant persisted in his refusal to refund the $350, this litigation ensued.
The issues herein highlight the relationship between the medical and legal professions. Very often — particularly in the field of torts — their paths intertwine. In order to do justice to a client’s cause involving substantial personal injuries, the attorney needs the services of a competent medical expert.
There are procedures available to the attorney whereby the court appearance of the medical expert can be assured. One of these, of course, is the simple power of subpoena. However the indulgence in practice of that type would have many shortcomings. In the strict sense of the word, the medical expert could be expected to obey the usual mandate, i.e., to be in court upon a day certain at the opening thereof, and — to be available until such time as his testimony might be taken. Further — the usual statutory subpoena fee and mileage would constitute the only recompense that the medical expert might technically claim.
*1014 Need it be demonstrated that such a course would be eminently unfair? It is certainly apparent that the needless waste of medical time would ensue. Nor would the compensation be in keeping with the worth of the witness.
To what extent would testimony thus elicited assist the attorney in the representation of his client? The doctor under such circumstances would, at best, hurry through his testimony so that he might get out and return to his office. The prime victim of this malaise would be the attorney’s client.
It is, therefore, understandable that medical experts should be compensated in a measure that will fit their standing— both in the community in which they live, and in their profession. The matter of fees for such testimony and for related inter-professional activities has become the subject of programs worked out jointly by Medical and Bar Associations. And it is only fitting and proper that this has come to pass.
However,- the extent to which the medical expert shall dictate his court availability to the attorney is something else again. The attorney is not a free agent. He must adhere to directives from the courts. Calendar congestion is bad enough as it is. The judiciary must use reason, restraint and compassion in moving it along. And the judiciary does just that.
But — when an attorney is told by a member of the medical profession that he cannot be available for this, that or the other reason, he indeed is then confronted with the twofold dilemma of proceeding in accordance with judicial directives and, at the same time, affording his client the best possible representation.
Prior to the adoption of the Uniform Commercial Code the doctrine of unconscionability was rarely employed. However, since its adoption the doctrine of unconscionability has been used to prevent unjust results in contract actions under the Uniform Commercial Code as well as non-type Uniform Commercial Code actions. (Albert Merrill School v Godoy, 78 Misc 2d 647.)
One definition of the modern doctrine of unconscionability, which actually predates the Uniform Commercial Code but has been cited as setting the guidelines even where the defense is raised under the code, is: "[A]n absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.” (Williams v Walker-Thomas Furniture Co., 350 F2d 445, 449.)
*1015 This definition has been cited in New York cases under the Uniform Commercial Code (Matter of State of New York v ITM, 52 Misc 2d 39), and in cases outside the scope of the code (Albert Merrill School v Godoy, 78 Misc 2d 647, supra).
Unreasonable restraints should not be countenanced. The court is persuaded to a great degree by the fact that the only day for which the defendant held himself available for a court appearance happened to be his usual day off — a day when, in the ordinary course of events, he would have no appointments scheduled, and no fees in the offing.
The fee to be charged by the medical expert: the conditions pertaining to the payment thereof must, perforce, be measured by the standards of conscionability.
And similarly the condition he attached was untenable. He fixed Thursday as the day he could get to court. He knew that the trial could — in no event have started until after 9:30 a.m. on Wednesday, June 9, 1976. Yet — he insisted that, as a condition precedent, he have 24 hours’ notice prior to 9:30 a.m. on Thursday, June 10, 1976, for the refund of the $350 in question.
In view of the fact that, upon the settlement of the Supreme Court action, Rivera was charged with $350 only, plaintiffs are the proper parties in this lawsuit.
For the foregoing reasons, judgment will be directed in favor of the plaintiffs for $350, together with interest thereon from June 10, 1976, as well as the costs and disbursements of this action.
All motions made — both at the end of the plaintiffs’ case and later at the end of the entire case — shall be deemed to have been decided in accordance with the foregoing.